UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Eugene Gayda</u>

    v.                                          Civil No. 05-cv-244-JD

<u>City of Nashua, Michael Buxton,</u>
<u>Michael J. Vaccaro, and Philip Chouinard</u>


O R D E R

Eugene Gayda brings a Fourth Amendment civil rights claim under 42 U.S.C. § 1983 and state law claims of trespass and invasion of privacy, arising from an incident in July of 2002 when Nashua Fire Rescue officers entered his apartment without a warrant or his consent.  The defendants move for summary judgment asserting that Gayda's Fourth Amendment rights were not violated, that qualified immunity applies, that evidence is lacking to support claims of supervisory and municipal liability, and that the evidence does not support his state law claims.  Gayda objects to summary judgment.


<u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate

the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

"An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it possesses the capacity to sway the outcome of the litigation under the applicable law."  Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations and internal quotation marks omitted).  To avoid summary judgment, "a measure of factual specificity is required; a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden."  Id.  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).

## Background

On July 6, 2002, Captain Philip Chouinard, with several other officers from Nashua Fire Rescue, arrived at a multi-unit

dwelling located at 7-9 Charles Street in Nashua to attempt an administrative inspection for automatic fire-warning devices. The Fire Marshall had requested a reinspection of the property after it had previously been found not to comply with the local and state requirements for such devices.  The property was owned by Eugene Gayda, who lived in one of the four apartments in the building.

Each apartment at 7-9 Charles Street had a separate outside entrance that was marked by a large, black numeral and letter on a white door.  When the officers arrived in a fire department truck, Chouinard and the other officers approached a screen door, which was unlocked.  Because the door behind the screen was open, the officers could see into the building where carpeted stairs led up to another door that was also open.  Chouinard knocked on the door jamb and called out, asking if anyone were home.  When he received no answer, Chouinard and the other officers went into the building and up the stairs to the second door where they met Gayda, who was in his living room.

Standing on the threshold of the open living room door, Chouinard identified himself and the other officers and asked if they could enter the apartment to inspect for automatic fire warning devices.  Gayda refused and told them to leave. Chouinard attempted to persuade Gayda to consent to the inspection, but Gayda continued to refuse and insisted that they leave.  After exchanges lasting between a minute and three

minutes, the officers went down the stairs, telling Gayda that they would return with a warrant. Once outside, the officers stopped on the porch to discuss the situation until Gayda again told them to leave, at which time they got into their truck and drove away.

## Discussion

Gayda contends that his Fourth Amendment right to be free from unreasonable searches was violated by Chouinard's actions, and that Chouinard's supervisors, Chief Michael Buxton, and Fire Marshall Michael J. Vaccaro, and the City of Nashua are also liable for the violation of his Fourth Amendment right. Gayda further alleges claims of trespass and invasion of privacy under New Hampshire law. The defendants assert that the incident did not violate Gayda's Fourth Amendment rights, that Chouinard is entitled to qualified immunity, that Gayda cannot show a factual basis for supervisory or municipal liability claims, and that he cannot prove his state law claims.

A.  Fourth Amendment Violation

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a

warrant are presumptively unreasonable." Brigham City v. Stuart, 126 S. Ct. 1943, 1947 (2006). Whether an action is reasonable in the Fourth Amendment context is an objective inquiry, making the subjective intent or motivation of a particular officer irrelevant. Id. at 1948. The warrant requirement is subject to exceptions in exigent circumstances. Id. at 1947.

The parties agree that Chouinard, along with other officers, entered Gayda's home without a warrant and without Gayda's consent. Chouinard does not suggest that exigent circumstances existed when he entered Gayda's apartment. The parties also agree that the purpose of Chouinard's visit was to inspect the building for automatic fire warning devices. They disagree as to whether Chouinard's actions constituted a Fourth Amendment violation.

Gayda asserts that Chouinard's entry into his apartment was unreasonable and violated the Fourth Amendment. Chouinard contends that he did not violate the Fourth Amendment because he did not search the apartment but instead only entered, mistakenly, to ask permission to inspect for smoke detectors. Chouinard states that he thought the door on the ground floor was an entrance into a common area in the apartment building and that he went up the stairs to find a door to an individual apartment. Gayda disputes Chouinard's account of the incident, arguing that the decor in the entry and stair area did not look like a common area in an apartment building and that the numbers on the outside

doors indicated that those were the entrances to the individual apartments.  Chouinard also contends that if any Fourth Amendment violation occurred, it was too minimal to be actionable.

Chouinard relies on Artes-Roy v. City of Aspen, 31 F.3d 958 (10th Cir. 1994).  In that case, the court rejected the plaintiff's Fourth Amendment claim, arising from an entry into her home by a building inspector without a warrant or her consent, on alternative grounds, holding that his actions did not violate the Fourth Amendment and that if any violation had occurred, it was de minimis and, therefore, not actionable.  Id. at 962-63.  The court concluded that because the inspector intended to enforce a stop-work order and did not intend to search, inspect, or make an arrest when he entered the plaintiff's home, no Fourth Amendment violation occurred.  Id. at 962.  Alternatively, the court held that the entry was at most a de minimis violation that was not actionable.  Id. at 963.

The Fourth Amendment, however, protects against any physical intrusion into a home by the government. Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) ("It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" quoting United States v. U.S. Dist. Court for E. Dist. of Mich., 407 U.S. 297, 313 (1972)).  "[P]rivacy and security in the home are central to the Fourth Amendment's guarantees as explained in [the Court's] decisions and as understood since the beginnings of the Republic."  Hudson

v. Michigan, 126 S. Ct. 2159, 2170 (2006) (Kennedy, J., concurring).  As Justice Breyer wrote in dissent in Hudson, the Supreme Court

> decided 120 years ago . . . in frequently quoted language that the Fourth Amendment's prohibitions apply "to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life.  It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property."

Id. at 2172 (quoting Boyd v. United States, 116 U.S. 616, 630 (1886)).  In addition, the subjective intent or purpose of the intruding officer does not determine whether a Fourth Amendment violation occurred.  See Brigham City, 126 S. Ct. at 1948.

In contrast to Supreme Court precedent, the Tenth Circuit suggests in Artes-Roy that the Fourth Amendment does not apply to a governmental agent's uninvited and warrantless intrusion into a home for purposes other than conducting a search or making an arrest.  Given the breadth of Fourth Amendment protection for the privacy of the home and lacking a "de minimis" standard in this context in the First Circuit, to the extent the Tenth Circuit limited Fourth Amendment protection to actual or intended searches or arrests, that holding is not persuasive.  In addition, even if Artes-Roy provided the governing law, material factual disputes about what Chouinard intended when he entered Gayda's apartment and what a reasonable officer in his position

would have known preclude summary judgment.

The Tenth Circuit also held in <u>Artes-Roy</u> that if a Fourth Amendment violation occurred when the inspector entered the plaintiff's house, the violation was de minimis and therefore not actionable. <u>Artes-Roy</u>, 31 F.3d at 963. The court explained that the intrusion was so insubstantial, in the circumstances of that case, that no actionable constitutional wrong had occurred. <u>Id.</u> Chouinard argues that any violation that occurred because of his instrusion into Gayda's apartment with the other officers was similarly de minimis.

In <u>Artes-Roy</u>, the court noted that the plaintiff knew the inspector was coming to her house because she saw him outside; his intrusion into the house was minimal, and workers employed by the plaintiff were present while the inspector was there. <u>Id.</u> at 962. In this case, although Chouinard argues that he inadvertently entered Gayda's apartment, thinking he was in common space shared by the tenants, that remains a disputed point. It is undisputed that he and the other officers entered through the outside door, crossed the entry area, and climbed the stairs to Gayda's living room. It is also undisputed that they did not leave when they were first told they were inside Gayda's apartment and asked to leave but instead attempted to persuade Gayda to consent to the inspection. Although Gayda had some warning of their arrival from the noise of their truck and although the intrusion lasted only a few minutes, the

8

circumstances do not permit a conclusion that it was sufficiently insubstantial to be de minimis as a matter of law.

Therefore, Chouinard has not shown that he is entitled to summary judgment on the merits of the Fourth Amendment claim against him.

B.  Qualified Immunity

Chouinard alternatively asserts that he is entitled to qualified immunity.  "'Qualified immunity protects public officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Valdizan v. Rivera-Hernandez, 445 F.3d 63, 64 (1st Cir. 2006) (quoting Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005)).  The three-step analysis for qualified immunity requires the court to determine whether the plaintiff alleged that the defendant violated a constitutional right, whether the right was clearly established at the time in question, and whether an objectively reasonable officer in the defendant's position would have believed that his action violated the clearly established right. Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005).

Chouinard does not dispute that Gayda has alleged a

violation of his Fourth Amendment right or that such a right was clearly established in July of 2002 when he entered Gayda's apartment.  He argues that his actions were reasonable because he did not realize he had entered Gayda's apartment when he entered the building through the unlocked screen door.

In support of his qualified immunity claim, Chouinard states in his affidavit that he thought the screen door opened into a common area and that Gayda's apartment door would be at the top of the stairs.  He argues that his mistake was reasonable because other apartment buildings in Nashua, including other buildings owned by Gayda, have common areas from which the individual units open.  Gayda responds, however, that the numbers and letters (7A, 7B, 9A, and 9B) on each of the four separate doors into the building should have alerted Chouinard that those doors entered into each apartment and that the area inside the door was not a common area.  He also argues that the decor of the entry and stairway indicated that the area was part of his private apartment and not a common area.

The third step of the qualified immunity inquiry is not based on the subjective intent of the defendant.  See Tower v. Leslie-Brown, 326 F.3d 290, 296 (1st Cir. 2003).  Instead, it is an objective inquiry into whether a reasonable officer would have known that his actions would violate Gayda's Fourth Amendment rights.  Id.  In this case, the question is whether a reasonable fire department officer, in the same circumstances as Chouinard,

would have realized that the door he opened lead into a private apartment not into a common area. The circumstances surrounding Chouinard's entry, viewed favorably to Gayda, raise factual issues as to what a reasonable officer would have understood, which cannot be resolved on summary judgment.

C.  Municipal Liability

The City of Nashua contends that Gayda cannot show that a triable issue exists as to its liability for any constitutional violation that occurred. For the city to be liable, Gayda must show that the Fourth Amendment violation resulted from a policy, ordinance, regulation, or official decision adopted by the city or from a custom or practice that was "so widespread or pervasive that the policymakers must have had actual or constructive notice of it, yet did nothing to modify it." Surprenant, 424 F.3d at 19. Gayda asserts that Chouinard entered his home without a warrant or his consent as the result of a custom or practice in Nashua.

In support of his theory, Gayda points to two other intrusions by Nashua Fire Rescue into apartments to conduct inspections without proper consent or a warrant. Gayda states in his affidavit that before the incident in his apartment, Nashua Fire Rescue officers had inspected an unoccupied and unlocked apartment in another multi-unit property, which he owned, without his consent or a warrant. He also submits the affidavit of

Suzanne Bell who states that at the request of Nashua Fire Rescue officers, she unlocked the door of her tenants' unit to allow inspection for smoke detectors but was later sued by the tenants for improperly consenting to the inspection.

Gayda offers only three incidents over several years to support his claim of a custom or practice to enter homes without consent or a warrant.  The inspection of Suzanne Bell's property was done with her consent, although not with the tenants' consent.  Gayda's evidence is much too sparse to show a pervasive or widespread practice in Nashua of conducting inspections in violation of the Fourth Amendment.  Therefore, the City of Nashua is entitled to summary judgment on Gayda's federal claim.

D.  Supervisory Liability

Gayda contends that Chief Buxton and Fire Marshall Vaccaro are liable for the alleged Fourth Amendment violation due to improper or deficient training they provided to Chouinard.  As supervisors, Buxton and Vaccaro can be liable only for their own actions, not based on a theory of vicarious liability.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005).  When supervisors did not directly participate in unconstitutional conduct, they "may only be held liable where (1) the behavior of [their] subordinates results in a constitutional violation and (2) the supervisor[s'] action or inaction was affirmatively linked to the behavior in the sense that it could be

12

characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Id. (internal quotation marks omitted). Deliberate indifference in the context of a charge of inadequate training means a failure to provide training despite "an obvious likelihood that inadequate training will result in the violation of constitutional rights." Id. at 10.

Gayda offers nothing to show that Chief Buxton played any role in training Chouinard. In fact, the excerpt of Fire Marshall Vaccaro's deposition that Gayda submitted with his objection establishes that Vaccaro was responsible for training officers to do smoke detector inspections. Therefore, Gayda has not shown a trialworthy issue with respect to Buxton's liability for the alleged Fourth Amendment violation.

More importantly, Gayda offers little to show that the fire department's training for conducting inspections was deficient. He suggests that the training was not well organized and lacked defined standards. He criticizes part of a training slide that was apparently used in 2003, after the incident at Gayda's apartment. In contrast, Chouinard states in his affidavit that he was trained by Nashua Fire Rescue before the incident at Gayda's apartment and that he was taught not to enter any living area without the owner or occupant being present and to leave if asked to do so. Further, the 2003 training slide, which Gayda relies upon, taken as a whole actually supports Chouinard's

statement.

Based on the record presented here, Gayda has not provided a factual basis for his supervisory liability claims.  Chief Buxton and Fire Marshall Vaccaro are entitled to summary judgment on Gayda's federal claim against them.

E.  State Law Claims

Gayda alleges state law claims of trespass and invasion of privacy.  The defendants argue that he cannot prove either claim because Chouinard's entry into Gayda's apartment was inadvertent, not intentional, and because the intrusion did not meet the high standard to prove an invasion of privacy.

Trespass under New Hampshire law is an intentional tort, requiring proof that the defendant intentionally, not just negligently, intruded onto the plaintiff's property.  Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972); see also Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 271 (1st Cir. 1990).  Invasion of privacy requires proof "that the defendant should have realized that it would be offensive to persons of ordinary sensibilities" and that "the intrusion has gone beyond the limits of decency."  Karch v. BayBank FSB, 147 N.H. 525, 534-35 (2002) (internal quotation marks omitted).

As is discussed above, whether Chouinard entered Gayda's apartment intentionally or inadvertently is disputed.  Therefore, summary judgment is not appropriate on the trespass claim.

Gayda's invasion of privacy claim presents a close question as to whether Chouinard's intrusion went beyond the limits of decency.  Taking the facts in the light most favorable to Gayda, however, a possibility exists that a jury could find in his favor.  Therefore, summary judgment is also denied on that claim.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 5) is granted with respect to the federal claim against the City of Nashua, Chief Buxton, and Fire Marshall Vaccaro, and is otherwise denied.

Trial is scheduled to begin on October 17, 2006.  The parties' pretrial statements indicate that no demand or offer has been made.  Now that the summary judgment motion is resolved, the parties are directed to use their best efforts to explore settlement before the parties and the court incur the additional expenditures of time and resources that will be necessary for trial.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

October 2, 2006

cc:  Brian J.S. Cullen, Esquire
     Fred K. Mayer, III, Esquire